Good morning, Your Honors. May it please the Court, Dana Duncan on behalf of Mark Schloesser. In this case, Mr. Schloesser was approved for disability insurance benefits at a hearing before an administrative law judge. The Appeals Council initiated its own review and denied 970. The issue before the Court is twofold. Mr. Schloesser asserts that the Appeals Council action was contrary to law because the Appeals Council first failed to comply with the burden of proof under the regulatory guidelines, and second, failed to properly assess credibility. Under 20 CFR 404.970, the Appeals Council will review to determine if the ALJ's findings or are not supported by substantial evidence. This is not a preponderance of the evidence standard that's made clear in the HALEX, which is the internal guidelines that Social Security applies to its judges. It is not a de novo review. This makes sense since the Appeals Council review on cases where it's initiated by the claimant will only overturn the ALJ's decision unless there's another way of looking at it, which contradicts the ALJ's findings. So is the bottom line, in terms of your position, that the Appeals Council was required to consider Schloesser's mental impairments because the ALJ made a finding that his affective and anxiety disorders affected? Only, or that's part of it, Your Honor. The whole thing is, is this is the problem, and I can in, like, two seconds outline this. A substantial evidence review by the Appeals Council should have been a, this is what the ALJ found, this is why it was wrong. But there's nothing in there. If you look, and you can specifically see their, their portion in their decision, they outline and include a bunch of evidence and say how this does not support the ALJ's conclusions, but it all pertains to a cervical spine and a shoulder problems, all, none of which was mentioned by the ALJ. This is a situation where the ALJ had an opportunity to evaluate the case longitudinally. She had a 2002 back surgery and multiple pieces of evidence, including MRIs and x-rays, which established that the lumbar spine was involved. She also had reported that there was doctor's report from 2014, which indicated that his limitations were substantial and would preclude even competitive employment at least from 2013. The ALJ then took, which is the standard, which is Social Security Rule 83-20, which is Social Security Policy, which is to take into account this evidence and then determine when you have a progressive condition where disability began. So she said it began where, in early 2011, at the amended onset date. The Appeals Council, in contrast, never evaluated the evidence she considered, never evaluated Schlosser's testimony from the hearing, which was quite substantial about how he needed to take breaks, how he changed his career path to accommodate him, his back problems following his surgery in 2002, how he worked in 2009, basically doing construction work for friends and family who were trying to help him out, how he took breaks, how he spent his day lying down periodically because of his back problems. The judge pointed this out and in her decision, Judge Meacham, who by the way was a member of the Office of General Counsel for 16 years in the Denver office before she became an ALJ, took all this into account and specifically notices this, mentions it repeatedly. I think it's three different places in her decision that she found Mr. Schlosser's testimony to be credible and decided her limitations based on that. She stated that both state agency doctors had limited him to light. She found less than that because she believed him and found him credible. With regard to your Honor's specific question about the mental disorder, the judge took into account his mental disorder, even though it was not a severe impairment, because under Social Security rules and regulations, both severe and non-severe impairments should be because of depression or because he reported that his pain was severe enough that he had to take breaks. She limited him on his ability to stay focused and stay on attention and that's why she gave him limitations being off task as she did. Well, the record reflects that he discussed being depressed with his doctor in December of 2011, two months after the date he was last insured. Other than his statement that he suffered from depression in the past, what evidence is there that he suffered from mental impairments during the time period at issue? His statements and subjective statements are sufficient if the judge believes them, if there's some credible evidence to support it. Because there's nothing, because I'm trying to get at this mental impairment seems to have an impact on the physical situation and there's really no mention of that in the... And part of the problem is, and this is another point that the Appeals Council never addressed, Mr. Schlosser had no insurance until early 2011. And the fact is they are critical of him for having minimal amount of treatment and having spotty medical records that never took into consideration that he didn't have medical insurance. Did he present evidence to support his assertion that those infrequent visits were due to his financial situation and his lack of activities of daily living? Questionnaire outlined that he did not have insurance until early 2011 when his wife did. As far as specific proof, none was... And in that questionnaire, did he indicate he just couldn't afford it? He had indicated he had moved to Wisconsin from Illinois in 2009, did not have insurance until his wife got a job working for Spirus Clinic, who then provided insurance for the family and he started seeing doctors at that time. And that's in the record itself where he notices it. The ALJ... But there was no real discussion by the Appeals Council as to their consideration of his reasons that he failed to have frequent treatment, correct? That's correct. That's nothing that they commented on? Yes. And in fact, Judge Meacham, the ALJ, noted that he had had the disectomy in 2002, this is in her decision, that he had reported sharp pain sensations after that in his lower extremities. He had an x-ray in 2011 showing degenerative disc disease at L5-S1. They did an that compressed the nerve root, that he had poor lumbar range of motion and tenderness on palpation, and that he walked with a poor gait in March of 2011. Not one piece of that evidence is contradicted by the Appeals Council or addressed. So it's very difficult to see how the Appeals Council's decision shows that the judge did not exercise or the judge's decision was not based upon substantial evidence when there's nothing to even criticize the heart of her decision. As far as the left shoulder and the neck problems, they make a big deal of the fact that a lot of these treatments were after the date last insured. But the problem that they're having there is that these are conditions that just don't arise. They arose a couple of months after the date last insured. And Judge Meacham specifically noted that because these are degenerative conditions, they were likely to have arisen before his date last insured and in conjunction with where she found the alleged onset date. So your problem is there the Appeals, part of it is the Appeals Council saying most significantly the record documents infrequent treatment before the expiration of the date of last insured. Correct. They did not look at the whole record. They did not look at what the ALJ's decision was and what the basis of her findings were. They then took and did their own independent review, changed and only cited facts that they felt were contrary to award of benefits without addressing any of the others, and then didn't even do a proper credibility assessment because they never at any point outlined what part of his testimony or any of the statements that he made in his function reports or other forms that he completed were not credible. So that's a twofold. They exceeded their burden of proof and they failed to undertake the credibility assessment. I believe I will retain the rest of my time for rebuttal. Thank you. Ms. Hahn. Good morning, Your Honors. Lou Hahn on behalf of the Commissioner of Social Security. We are talking about a eight to nine-month period in this case from January 1, 2011 until September 30, 2011 when Mr. Schlosser's insured status expired. So we're talking about a very finite period of time. So was it appropriate for the appeals counsel to give significant weight to the lack of medical visits but not to consider his statements that he lacked adequate insurance and financial resources? Well, that's something we did address in our brief, Your Honor, and that's a very good point, which as the district court pointed out, was not raised in the court below. But to the arguments that are now being raised in this court about the lack of insurance, by Mr. Schlosser's own statements in a functional report that he completed, I believe, November 2012, he said that he had periods of being uninsured prior to his alleged onset date, so before 2011. But as his attorney just now said, in early 2011, he was insured. In fact, the date is around February 2011. He began going to a place called Asperger's Clinic and began getting treatment for his low back degenerative disc disease and those symptoms. So really, but for perhaps the month of January, and it's uncertain, the rest of this eight to nine-month period of issue, he had insurance by his own statements. So that argument really doesn't go very far to help Mr. Schlosser's case because he had that insurance coverage by his own admission as early as February 2011. So what do you make of the statement of the Appeals Council that says, most significantly, the record documents infrequent treatment before the expiration of the date of last insurance? Well, Your Honor, that's the Appeals Council seeing if the ALJ's decision was supported by substantial evidence. Right. Which is a big issue here because that substantial evidence standard is something that Mr. Schlosser is making a great argument and putting a great deal of weight upon. And we would like to focus on the parts that the Appeals Council actually agreed with the ALJ because a great deal of the RFC in this case is actually the same between the ALJ's decision, which is no longer the Commissioner's final agency decision. So, and I know you want to focus on where the agreement is, but the heart of this appeal, I think, is the things that were not covered and the impact those things had. Correct. And those three things that the Appeals Council disagreed with and found that no substantial evidence supported are the limitations with regard to the flexion and rotation of the neck, the unscheduled breaks throughout the workday, as well as being off task for more than 10% of the day. The latter two have to do with the mental impairments, which Your Honor inquired about to opposing counsel. And those mental impairments are where significantly the Appeals Council found no substantial evidence to support. The Appeals Council's decision makes very clear that Dr. Claire Nativitad, who is a treating physician who only began seeing Mr. Schlosser about a year and eight months after his insured status expired, is where those limitations come from. Those limitations being found nowhere else. As Your Honor points out, there is a reference to depression, again, a couple of months after the expiration of the insured status, but it's those limitations that have really no support in the evidence. And the Appeals Council reasonably found that substantial evidence didn't include, it didn't support their inclusion. And so where is it that they consider his mental impairments? Well, Your Honor, it's clear on page four of seven of the Appeals Council decision that the report of treating physician Claire Natividad was considered. And it's at that exhibit, which the Appeals Council notes as exhibit 5F in the administrative record on page 11 of that record of that opinion. And it's that page, which although the Appeals Council doesn't specifically articulate every single thing found on that page, that's where those opinions and expectations are. You said page four of the seven page document, where is that? Yes, Your Honor. It's found in the appendix of the appellant's brief at A-26. Yeah, I'm on A-26. Yeah, I want to know which paragraph. The bottom of the first whole paragraph, the paragraph begins claimants and it ends with, to his treating physician Claire Natividad. Okay, so where is it in there that they talk about his mental issues? Well, Your Honor, that's where those come from. And while the Appeals Council didn't specifically address every single notation and piece of evidence. I understand, but yeah, I just want to see one word where they talk about his mental situation. Right, and the point is actually a good one because we make the point that we would like to see any piece, just one piece of evidence during the relevant period that talks about his mental situation. And I'm saying there's no comment by them on that page about anything involving his mental situation. So it's not something like, we've looked at it, we don't think it's enough. You know, we reviewed what happened below and we don't think that he had, we don't think those disorders affected it. I mean, it's not in there, right? The words aren't in there. There's no reference to it. Right. The only reference, Your Honor is correct, is that this doesn't cover the relevant period of time. This is one year and eight months after the date last insured. So whatever is in that opinion, which the Appeals Council clearly looked at, Your Honor is correct, the Appeals Council did not recite everything that was in that opinion, but that opinion is right there in that paragraph, right before that final sentence. Where do they talk about his lack of adequate insurance and the problem with financial resources? Just remind me because it's where that is. Actually, Your Honor, that's not a specific finding by the Appeals Council. And that issue is being raised for the first time here before this court. But the Appeals Council in the prior page, page three of seven, if you flip over, talks about the treatment history. It's in that history, which is a handful of treatment records during this eight to nine month relevant period, which the Appeals Council is finding to not support the fact that Mr. Schlosser would be totally unable to do any job in the economy. This discussion of the evidence actually even begins before then on page two of seven. Then on this page three either about the gaps. I mean, they just make the conclusion because there are no records there. Correct. And so what I'm saying is if he has, there are no records there because he didn't have insurance and he couldn't go to a doctor because he did testify he was having issues during this time period, correct? He did not testify that he had insurance problems. No, I mean issues. I mean issues in terms of his physical situation. So what I'm saying is there may not be any medical records that talk about his physical situation that he's testified to because he couldn't go to a doctor, because he couldn't afford insurance. Okay, so when they're reviewing the evidence, that can become a factor. That gap has an impact, the gap of lack of insurance, at least as I understand the timing and what his argument is. Respectfully, Your Honor, that's impactful into the period of time before his alleged onset date. There is this testimony about his lack of insurance before January 2011. But as of February 2011, and this is the only period that is relevant for the consideration of his claim of total disability, as of February 2011, he was insured. And Your Honor is correct that this insurance factor doesn't specifically come up in the Appeals Council's decision, which is why Mr. Schlosser's argument that the Appeals Council somehow unfairly weighed his having or not having insurance is not really an applicable argument when it comes to this particular decision. The Appeals Council talks about the treatment that he was able to seek. And as Your Honor points out, prior to 2011, perhaps the gaps in that treatment are because of the fact that Mr. Schlosser was uninsured. But as of February 2011, he visited treatment physicians, treating doctors such as Dr. Crowther, Dr. Budleski. In the months following the expiration of his insured status, he even visited an orthopedist, a Dr. Duhlman. And then years later, he visited the Dr. Natividade. But during this relevant eight to nine month period, almost all of it was covered by insurance. As Mr. Schlosser himself said, he had insurance as of February 2011. The Appeals Council decision really focuses on the fact that for this eight to nine month period of time, there are not the significant reports, even from Mr. Schlosser himself, who rated his expiration of his insured status in August 2011, saw Dr. Crowther for abdominal pain and abdominal symptoms, but made no other reports of pain. Also told his treating doctor, Dr. Budleski, during this relevant period of time that he was not taking prescribed pain medication. This is the evidence that the ALJ then found disability on. And it was more than reasonable for the Appeals Council to, in its own decision, say that there's just not the substantial evidence to support those three other limitations, which are the only three that the Appeals Council removed from the RFC. And that was significant enough to then make it so that the finding was Mr. Schlosser could perform significant numbers of jobs. I see that my time has expired unless your honors have any additional questions. I just have one question. It was March of 11 that he went to Budleski and talked about his lower back pain. And then it was like five months later, he's treated for the abdominal pain. This is the period when he's uninsured. Incorrect, your honor. Actually, that's the period he has insurance. As of February 2011, based on his own functional report, he completed that report, I believe, in November 2012. And these are reports that claimants complete as part of their application for disability. He completed that report himself. And he said February 2011, he began going to Asperis Clinic, which perhaps is where he saw Dr. Budleski. And as of that time, he had insurance. So this relevant period of time, from January to September 2011, was mostly insured. Well, that's when he started going to the doctor, apparently. Correct. And it's telling because that's when there are some treatment records. But the treatment records really just don't show the kind of severity of someone who's claiming complete disability. And significantly, the neck complaints and things do occur months after the expiration of his insured status. So it was in December of 11 when the x-ray and MRI showed the disc narrowing. That's correct. And that was a period when he was on insurance and not on insurance. As of February 2011 and on, Mr. Schlosser, by his own account, had insurance. Okay. Thank you. Thank you. Of course, being on insurance does not also mean a person who has not worked for two years can end the evidence in the record where he testifies to that. Well, it was an issue that was raised. So that's a fundamental flaw. And one that I noted here is that if the Appeals Council had a problem with that, they should have remanded the case and told the ALJ to gather information that pertains specifically to that. When the ALJ doesn't ask about the insurance and is inclined to grant the award, you don't bring up every issue. This is a number of cases such as the Engstrom decision. If we had to raise this, and I handled this at the administrative level, if I had to raise every potential issue, we'd have five-hour hearings. So I have to go with what the ALJ is asking for and what she thinks is relevant and important. I'm out of time, I guess, but I guess the only thing I would like to indicate is, at no time in the Appeals Council's decision do they even mention the word pain. They've never assessed anything. We look at the ALJ's decision and she states in the middle paragraph, right before number six of her decision on page 25 of the record, that she makes these findings that differ from what the Appeals Council did because of his credible testimony regarding his pain. Yet there's no evidence that the Appeals Council did any assessment of his subjective pain. No assessment as to whether any medical treatment for his back would have been of merit, especially with somebody with limited resources. Nothing. So if there are no questions, I've expired my time. Thank you, Mr. Duncan. Thank you. Thank you, Ms. Hahn. Case is taken under advisement.